UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN MCLAUGHLIN,<br><br>        Plaintiff,<br><br> -against-<br><br>LONDON FISCHER LLP, and BERNARD LONDON, individually,<br><br>        Defendants. | **COMPLAINT**<br><br>**Civil Action No.:**<br><br>Jury Trial Demanded |

BRIAN MCLAUGHLIN ("Plaintiff"), by and through his attorneys, STEVENSON MARINO LLP, as and for his Complaint against LONDON FISCHER LLP ("LONDON FISCHER" or "the Firm"), and BERNARD LONDON, individually (collectively as "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

**INTRODUCTION**

1. Plaintiff, who is approximately forty-one (41) years old and worked for the Firm for ten (10) years, was recently diagnosed with terminal cancer. Soon after notifying Defendants of his diagnosis, Defendants egregiously terminated his employment without engaging in the interactive process. As a result, at the lowest point in Plaintiff's life, Defendants kicked Plaintiff when he was down to make a horrific set of circumstances even worse. On top of it all, the Firm, through his supervisor, Virginia Futterman, callously told Plaintiff that "**[y]ou're a smart guy, you should have seen something like this [i.e., his termination] coming**." Defendants' conduct violates all societal norms of decency – as well as violates various federal and state laws designed

1

to protect employees that receive devastating news concerning their health but nevertheless must continue to work to provide for themselves and their families.

## NATURE OF THE CASE

2.  This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights guaranteed to him by: (i) the disability discrimination provisions of the Americans with Disabilities Act of 1990 ("ADA"); 42 U.S.C.A. § 12112(a); (ii) the disability discrimination provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a); (iii) the anti-retaliation provisions of the ADA, 42 U.S.C. § 12203(a); (iv) the anti-retaliation provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107(7); (v) the reasonable accommodation provisions of the ADA, 42 U.S.C.A. § 12112(b)(5)(A); (vi) the cooperative dialogue provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(28); and (vii) any other claim(s) that can be inferred from the facts set forth herein.

3.  Defendants employed Plaintiff as an associate attorney for ten (10) years, during which he established an exceptional employment record for Defendants' New York City law firm. In December 2021, Plaintiff became ill with the Covid-19 virus, which left him with a persistent dry cough and shortness of breath. These lingering symptoms, which progressively worsened, led Plaintiff down a path involving a series of tests and treatments, including major surgery.

4.  Ultimately, the tests revealed cancerous cells and on March 1, 2022, doctors broke the distressing news to Plaintiff that the images of the cancerous cells were consistent with Mesothelioma. On March 3, 2022, Plaintiff was diagnosed with stage 4 cancer and the doctors additionally informed Plaintiff that the cancer was terminal, as it had already metastasized through his bones and lymph nodes, and that he possessed an inoperable tumor. Facing a harrowing road

of treatment ahead to prolong his life and beset with the requirement to be hooked up to an oxygen machine twenty-four hours per day, on March 31, 2022, Plaintiff requested a reasonable accommodation to continue to work remotely. In response, on May 16, 2022, in complete disregard of its obligations under federal and city laws to engage in an interactive process, Defendants terminated Plaintiff's employment in gross and egregious violation of the ADA and the NYCHRL.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On July 19, 2022, Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge No.: 520-2022-006567.

6. On September 19, 2022, in response to Plaintiff's request for Notice of Right to Sue, the EEOC "reviewed all the circumstances in the case to ascertain whether we will be able to complete [its] administrative process within 180 days [and] concluded that we will not be able to complete our administrative process within the allotted 180 days since your client's charge was filed, and we are issuing the requested Notice of Right to Sue."

7. Thereafter, the EEOC issued a Notice of Right to Sue ("Notice") for Plaintiff, which Plaintiff received on September 20, 2022.

8. Plaintiff has timely filed this Complaint within ninety days of receiving the Notice.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 12101, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

10. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

11. At all relevant times herein, Plaintiff worked for Defendants in New York, and was an "employee" entitled to protection as defined by the ADA and the NYCHRL.

12. At all relevant times herein, Defendants were and are a New York limited liability partnership with its principal place of business located at 59 Maiden Lane, 39th Floor, New York, New York 10038. During the relevant period, Defendants employed approximately seventy (70) attorneys and therefore have well more than the fifteen (15) employees required to be an "employer" within the meaning of the ADA and the NYCHRL.

## BACKGROUND FACTS

13. London Fischer is a law firm with three law offices in New York and California. London Fischer's principal office is located at 59 Maiden Lane, 39th Floor, New York, New York 10038. Defendant London is the firm's founding and managing partner and the ultimate decision-maker pertaining to the Firm's failure to engage in an interactive process and terminate Plaintiff because he recently learned he had terminal cancer.

14. On September 10, 2012, London Fischer hired Plaintiff as an associate attorney to work in the principal office.

15. In his role as an associate attorney, Plaintiff practiced labor law in the in the area of construction liability. Plaintiff served in this role for the Firm for nearly ten years as a valuable member of its labor litigation team, maintaining an unblemished employment record for the duration of his tenure.

16. Plaintiff's success with the Firm earned him numerous raises and he obtained the title of senior associate in 2017.

17. Despite his dedication and hard work on behalf of the Firm, following Plaintiff's receipt of news that he was suffering from stage 4 cancer, Defendants soon terminated his employment based on his life-threatening illness.

18. On December 20, 2021, Plaintiff informed his litigation team, including his direct supervisor, Virginia Futterman, that he tested positive for the Covid-19 virus and would not be able to come into the office that week as a result.

19. On December 26, 2021, although Plaintiff tested negative for Covid-19, he continued to suffer with a dry cough and additionally noticed that he was experiencing shortness of breath. Based on Plaintiff's underlying heart condition, Plaintiff contacted his cardiologist, who recommended that he receive a chest X-ray. Significantly, around this same time and despite his illness, Plaintiff completed his 180-hour monthly Firm billing requirement, as Plaintiff had continuously achieved for the prior 110 months of his employment.

20. On January 3, 2022, Plaintiff was diagnosed with pneumonia and resultantly began a ten-day antibiotic treatment. Following the conclusion of the ten days, however, Plaintiff recognized that he did not feel much better.

21. On January 20, 2022, Plaintiff again met with his cardiologist, who immediately noticed that Plaintiff was suffering from abnormal breathing and had new X-rays and CT-scans performed on his chest. Because the images revealed a significant amount of fluid in Plaintiff's chest cavity, Plaintiff's cardiologist ordered Plaintiff to undergo an outpatient procedure called thoracentesis. On this same day, Plaintiff called Futterman to inform her of his medical condition.

22. On January 25, 2022, Plaintiff underwent the thoracentesis procedure, resulting in thirty-two ounces of fluid drained from his chest. Although the doctors expected that Plaintiff's health would improve, Plaintiff noticed that he still felt ill. The doctors stated that he should feel better over the next few days.

23. On January 26, 2022, however, Plaintiff developed a fever and was directed to return to the hospital immediately, where he was promptly admitted. Plaintiff again called Futterman and informed her that based on the turn of events, he would be admitted to the hospital for an unknown period of time.

24. As a result of his symptoms, after being admitted to the hospital, Plaintiff required multiple tubes installed in the left side of his chest to attempt to drain the infected fluid out of his chest cavity. At this point, the doctors specified that the fluid was in his pleural space, which is the space between his lungs and his chest cavity.

25. At one point, on Sunday January 30, 2022, the doctors injected Plaintiff with a medicine to try and break up the clotted sections of fluid so that they could attempt to drain them more easily. Although this worked to some extent, it caused blood to flow into Plaintiff's pleural space. This caused his heart rate and breathing rate to skyrocket, in turn causing tremendous psychological stress and hallucination. The doctors then installed yet another chest tube on an emergency basis and immediately drained over a gallon of fluid out of Plaintiff's chest and placed him in the Intensive Care Unit.

26. By February 3, 2022, the doctors decided to perform a surgery consisting of bronchoscopy, thoracotomy, and decortication; essentially opening up Plaintiff's entire chest cavity from his left side and pulling out any material that should not be there. At the conclusion of the surgery, three chest tubes remained in his left side to continue draining any extra material.

While the surgery was ongoing, Plaintiff's surgeon took tissue samples from his lungs to try to determine origination of the infection. Throughout this entire ordeal, Plaintiff made near-daily calls to Futterman to keep her apprised of his condition and work absence.

27. On February 14, 2022, although still having difficulty standing, walking, and breathing, the doctors were confident that all fluid was drained and permitted Plaintiff to return home. Although Plaintiff informed Futterman that he was returning home and able to perform work remotely as he recovered, the resulting weakness and arduous recovery made this obviously impossible to accomplish.

28. On February 21, 2022, Plaintiff received a call from his doctor that the tissue samples revealed cancerous cells. This is the first time that cancer was ever mentioned to Plaintiff, who was told that he needed to undergo a PET-scan to get more information. Devastated, Plaintiff called again called Futterman to inform her of his diagnosis.

29. On March 1, 2022, Plaintiff underwent a PET-scan and was informed the next day that the images were consistent with Mesothelioma, which was even more devastating news.

30. On March 3, 2022, Plaintiff's doctors gave him a diagnosis of stage 4 cancer, as the cancerous cells had already metastasized through his bones and lymph nodes. He was additionally informed that the tumor in his lungs was inoperable and at this point, the cancer is *terminal*, and treatment can only prolong life. Plaintiff's doctors told him that his prognosis was anywhere from six (6) months to six (6) *years* to live.

31. As he continuously did throughout the ordeal, on that same day, March 3, 2022, Plaintiff called Futterman to give her the news, to which she responded that "the Firm is here to give you anything you need." Futterman ended the conversation with a suggestion that revealed

the Firm's sole focus: she suggested to Plaintiff that "pouring yourself into work will get you through this."

32. On March 21, 2022, Plaintiff attended an appointment at Memorial Sloan Kettering to start treatment. Up until this point, the tumor in Plaintiff's lung only required an oxygen machine to sleep. Due to the doctors' concern with his difficulty breathing, however, Plaintiff was informed that he would need to be hooked up to the oxygen machine at all times from this point forward, twenty-four hours per day.

33. On March 28, 2022, Plaintiff began his formal cancer treatments, which required him to undergo immunotherapy, taking two different drugs and receiving infusions every three weeks, indefinitely. Plaintiff was also prescribed various different medications to help alleviate the symptoms caused by the illness and treatments. Despite the tremendous ordeal that Plaintiff has been faced with psychologically, the debilitating physical ailments resulting from the cancer and treatments, and the time consumption of all the medical appointments, Plaintiff continued to work remotely and provide billable hours.

34. On March 31, 2022, Defendant London, the Firm's founding and managing partner, sent a Firm-wide email announcing that the office would be reopening full time on April 22, 2022. On that same day, Plaintiff sent London an email fully apprising London of his health, and requesting a reasonable accommodation under the ADA and NYCHRL, to continue to work remotely as his oxygen machine restricts his ability to commute from Nassau County to lower Manhattan. London ignored Plaintiff's email and never responded.

35. Only one month later, on May 2, 2022, Futterman emailed Plaintiff to schedule a call with Human Resources on that same day. During the call, rather than engage in any cooperative dialogue concerning reasonable accommodations, the Firm suggested that Plaintiff

"go out on disability," despite the fact that the Firm does not offer its employees any third-party disability benefits. In other words, the Firm's suggestion was nothing other than a request for Plaintiff to cease working for Defendant.

36. The Firm additionally informed Plaintiff that he would have to pay his own health insurance through COBRA while he was out on disability, which is effectively the same thing as termination of his employment. Indeed, when Plaintiff inquired about the income that he would receive and the amount of the COBRA payments, the Firm simply responded that it did not have those numbers in front of it. Through his own research, Plaintiff learned that the Firm was suggesting that he receive disability payments through New York State at $170 per week and make COBRA payments of $2,100 per month.

37. On May 3, 2022, Plaintiff emailed both Vincent Petrungaro, the Firm's Chief Administrative Officer, and Futterman, expressing that going out on disability was not a viable option and not a reasonable accommodation. After receiving no response, Plaintiff called Futterman, who coldly told Plaintiff that he had no other options and that it "was not her decision." After inquiring about whose decision it was, Futterman informed him that it was Defendant London's decision. Next, Futterman pointed to Mr. McLaughlin's lack of billing since his medical ordeal and stated to Plaintiff: "**[y]ou're a smart guy, you should have seen something like this coming**." After the call, Plaintiff immediately attempted to call Defendant London, but Defendant London never took his calls. As a result, Plaintiff emailed Defendant London insisting that going on disability was not an option, and even proposed reasonable accommodations for his continued employment.

38. On May 9, 2022, Defendant London finally decided to respond to Plaintiff, scheduling a call for May 12, 2022, to discuss his employment situation in light of his well-known

9

terminal illness. Remarkably, on this call, Defendant London and Futterman did not engage in the interactive process, but instead attacked the work performance of a ten-year employee, who learned that he was terminally ill with cancer only two months earlier. Defendant London also explained to Plaintiff that James Fischer, the other founding and named-partner at London Fischer, also became ill at some point during his practice and the Firm needed to remove him based on his disability as well. Defendant London's comments provide an established pattern of discrimination against members of the Firm on the basis of their disability.

39. On May 16, 2022, Defendants terminated Plaintiff's employment, effective June 6, 2022, on the basis of his disability and his request for a reasonable accommodation.

40. Defendants neither engaged in any cooperative dialogue with Plaintiff to discuss a reasonable accommodation nor issued any written determination identifying any accommodations granted or denied.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT LONDON FISCHER
*Disability Discrimination in Violation of the ADA*

41. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

42. The ADA prohibits discrimination against an employee on the basis of disability in regard to discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment.

43. As described above, Defendant London Fischer is an employer within the meaning of the ADA, while Plaintiff is an employee within the meaning of the ADA.

44. As also described above, Defendant London Fischer discriminated against Plaintiff by discharging Plaintiff on the basis of his disability and otherwise discriminated against Plaintiff with respect to the conditions and privileges of Plaintiff's employment based on his disability.

45. As a direct and proximate result of Defendant London Fischer's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

46. As a direct and proximate result of Defendant London Fischer's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

47. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Disability Discrimination in Violation of the NYCHRL*

48. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49. NYCHRL § 8-107 prohibits employers, because of an employee's disability, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

50. As described above, Defendants discriminated against Plaintiff by terminating Plaintiff on the basis of his disability, in violation of the NYCHRL.

51. As also described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

52. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

53. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT LONDON FISCHER
*Retaliation in Violation of the ADA*

54. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55. The ADA prohibits employers from discriminating against an employee because the employee has in good faith opposed any practice made an unlawful employment practice under the ADA.

56. As described above, Defendant London Fischer is an employer within the meaning of the ADA, while Plaintiff is an employee within the meaning of the ADA.

57. As also described above, after Plaintiff engaged in protected activity by requesting an accommodation under the ADA, Defendant London Fischer retaliated against Plaintiff by terminating Plaintiff's employment.

58. As a direct and proximate result of Defendant London Fischer's unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

59. As a direct and proximate result of Defendant London Fischer's unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

60. Defendant London Fischer's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of the NYCHRL*

61. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62. NYCHRL § 8-107(7) prohibits an employer from retaliating against an employee who has in good faith opposed any practice forbidden by the NYCHRL.

63. As described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

64. As also described above, after Plaintiff engaged in activity protected under the NYCHRL, Defendants retaliated against Plaintiff by terminating Plaintiff's employment.

65. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which Plaintiff is entitled to an award of monetary damages and other relief.

66. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

67. Defendants' unlawful actions were taken willfully and wantonly, and/or were so negligent and reckless and/or evidenced a conscious disregard of the rights of Plaintiff so that Plaintiff is entitled to an award of punitive damages.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT LONDON FISCHER
*Failure to Accommodate in Violation of the ADA*

68. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

69. The ADA prohibits employers from discriminating against an employee on the basis of disability by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee, unless such employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer.

70. As described above, Defendant London Fischer is an employer within the meaning of the ADA, while Plaintiff is an employee within the meaning of the ADA.

71. As also described above, Defendant discriminated against Plaintiff by failing to reasonably accommodate Plaintiff's known disability even though such accommodation posed no undue hardship on the operation of the employer's business, in violation of the ADA.

72. As a direct and proximate result of Defendant London Fischer's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

73. As a direct and proximate result of Defendant London Fischer's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continue to suffer,

severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

74. Defendant London Fischer's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

**SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Engage in Cooperative Dialogue in Violation of the NYCHRL*

75. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

76. NYCHRL § 8-107(28) prohibits employers from refusing or otherwise failing to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the employer has notice may require such an accommodation related to a disability. NYCHRL §8-107(28) additionally requires that upon reaching a final determination at the conclusion of a cooperative dialogue, the employer shall provide an employee requesting an accommodation with a final written report.

77. As described above, Defendants refused or otherwise failed to engage in a cooperative dialogue within a reasonable time of Plaintiff's request for an accommodation, which Plaintiff required based upon his disability, in violation of the NYCHRL.

78. As also described above, Defendants failed to issue Plaintiff a final written report at the conclusion of the cooperative dialogue process, in violation of the NYCHRL.

79. As also described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

80. As a direct and proximate result of Defendants' failure to engage in a cooperative dialogue in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

81. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

## **DEMAND FOR A JURY TRIAL**

82. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. An order granting preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

d. An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with Plaintiff's claims, whether legal or

equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that Plaintiff would have received but for Defendants' unlawful conduct;

  e. An award of damages to be determined at trial to compensate Plaintiff for harm to Plaintiff's professional and personal reputations and loss of career fulfillment in connection with Plaintiff's claims;

  f. An award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with Plaintiff's claims;

  g. An award of punitive damages to the extent permitted by law, commensurate with Defendants' ability to pay;

  h. An award to Plaintiff of reasonable attorneys' fees, as well as Plaintiff's costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

  i. An award of pre-judgment and post-judgment interest, as provided by law; and

  j. Granting Plaintiff such other and further relief, including equitable relief, as this Court finds necessary and proper.

Dated: White Plains, New York
   October 20, 2022

                Respectfully submitted,

                STEVENSON MARINO LLP
                *Attorneys for Plaintiff*
                445 Hamilton Avenue, Suite 1500
                White Plains, New York 10601
                Tel. (212) 939-7229
                Fax. (212) 531-6129

       By: _____
                JEFFREY R. MAGUIRE
                JUSTIN R. MARINO